# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs March 1, 2005

## STATE OF TENNESSEE v. TONY EVANS

### Direct Appeal from the Criminal Court for Shelby County
### No. 00-09619     Arthur T. Bennett, Judge

### No. W2004-01747-CCA-R3-CD  - Filed June 1, 2005

The defendant, Tony Evans, pled guilty to unlawful possession of .5 grams or more of cocaine with the intent to sell.  He was sentenced to six years in a community corrections program but was later placed on probation.  Thereafter, the trial court revoked the defendant's probation and ordered him to serve the remainder of his six-year sentence.  On appeal, the defendant challenges the trial court's revocation of his probation.  Upon review, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

J.C. McLin, J., delivered the opinion of the court, in which Thomas T. Woodall and James Curwood Witt, Jr., JJ., joined.

Robert Wilson Jones, (of counsel) Shelby County Public Defender; Tony N. Brayton (on appeal) and J.T. Harris (at trial), Assistant Shelby County Public Defenders, for the appellant, Tony Evans.

Paul G. Summers, Attorney General and Reporter; Seth P. Kestner, Assistant Attorney General; William L. Gibbons, District Attorney General; Chris Scruggs and Lee Coffee, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## I. Facts

The record reflects that the defendant pled guilty to possession of .5 grams or more of cocaine with the intent to sell.  On October 2, 2001, he was sentenced as a Range I standard offender and placed in a community corrections program for six years.  On December 18, 2002, the defendant was transferred to the state probation office and placed on probation.[1]  On January 22, 2004, a probation

---

[1] Although the trial court's transfer order reflects a probation sentence of six years, the probation violation report and probation revocation hearing transcript indicates a probation sentence of five years.  In addition, the entry of

(continued...)

revocation warrant was issued indicating that the defendant had been arrested for animal fighting, cruelty to animals, keeping an unvaccinated dog, failure to attach rabies tags, and theft of property over $1,000. Counsel was appointed and a hearing was held on July 8, 2004.

At the hearing, Detective Nick Hazlerig testified that he and other officers from Desoto County, Mississippi were investigating some thefts in Shelby County. Based upon a tip from a confidential informant, they were led to 1485 Lawncrest. Hazlerig stated that he believed the address to be the defendant's property based upon information retrieved from a data kiosk. Upon arrival at 1485 Lawncrest, Hazlerig observed three all terrain vehicles (ATVs) which he believed to be stolen. He also spotted a black male talking on a cell phone. However, when he and the other officers called out to the man, the man went inside the house and refused to come to the door. After securing a search warrant, Hazlerig along with other law enforcement officials confiscated several items including a Suburban and a trailer with two of the stolen ATVs on it. Hazlerig testified that as the officers gained entry to the property, they were approached by seventeen-year-old Constance Richardson. Hazlerig stated that in speaking with Richardson, she told him that the black male seen earlier and the defendant were at the house the first time he and other officers arrived but left before the officers secured the search warrant and entered the property. Hazlerig also stated that the defendant later claimed ownership of the trailer but not the Suburban. On cross-examination, Hazlerig admitted that the defendant's name was not on the utilities bill for 1485 Lawncrest. Hazlerig also testified that a pickup truck parked on the side of the house was not confiscated because it was properly registered to a relative of the defendant.

Carolyn Lynch from the Memphis Animal Shelter, testified that she was called to 1485 Lawncrest by law enforcement. Lynch testified that she had been to this property on two prior occasions and believed the property to be owned and occupied by the defendant. Lynch testified that after entering the property she observed three dead, adult Pit Bulls lying in the back of a white pickup truck. Lynch stated that she believed the pickup truck belonged to the defendant because she had observed the defendant driving it a couple of times. Lynch described the condition of two of the dead Pit Bulls as infected with maggots and the third Pit Bull afflicted with puncture wounds and blood stains on its chest and legs. Lynch also saw seventeen adult dogs, four puppies, two treadmills, and some vitamin B medication on the property. Of the seventeen adult dogs, three were dead, most had old scarring, and some had fresh wounds. One of the four puppies was also dead. Lynch testified that the injuries and scarring on the dogs and the treadmills and vitamin B indicated the dogs were used in dog fighting. Lynch showed the trial judge pictures of some of the dogs and one of the treadmills.

Lynch testified that the dogs were taken to the animal shelter and eventually put to sleep. According to Lynch, the defendant came to the shelter to claim the dogs but was not allowed to take them from the shelter. On cross-examination, Lynch acknowledged that the dogs had rabies shots

---

[1](...continued)
the transfer order date indicates that the defendant served about one year of his community correction sentence before being placed on probation.

but claimed the Desoto County tag showing that the dogs received rabies shots was not valid in Shelby County. In addition, Lynch admitted that she did not see the defendant on the property the night the dogs were taken to the animal shelter.

Richardson testified on behalf of the defendant. She testified that she and a friend, James Thomas, had leased the Lawncrest property from the defendant with the understanding that they would maintain the property and care for the defendant's dogs. At the time she moved in, the defendant had ten dogs on the property. Richardson stated that she was alone in the house on the day the police came to the house and only realized that the police were entering the property when she saw the flashing lights of the police cars. According to Richardson, she told the police that no one was inside the house or on the property. On cross-examination, Richardson denied telling Hazlerig that the defendant and another man left the house before the police arrived with the search warrant. She claimed that two of the Pit Bulls found in the pickup truck were dead because one had broken free, killed one of the others, and eventually died from its own wounds. Richardson also denied noticing scars on the dogs and claimed nothing was wrong with the dogs. Richardson stated that she had only been living on the property for a month before the police came.

The defendant testified that he owned two properties and leased the Lawncrest property to Thomas and Richardson with the understanding that they would maintain the property and care for his dogs. The defendant showed the court a written lease for the Lawncrest property. The defendant also submitted a utility bill showing that he paid utilities at another residence. According to the defendant, he was in Oklahoma the day the police raided his Lawncrest property and impounded his dogs. The defendant acknowledged that he owned ten dogs and had attempted to recover the dogs from the animal shelter. He claimed that his dogs had received their proper shots. He also claimed Lynch had a "personal vendetta" against him that had been going on for years.

On cross-examination, the defendant denied that he used his dogs in dog fights. The defendant testified that the treadmills and vitamin B supplies were to help the dogs train for competitive "weight pulls" and that his dogs had won trophies for these "weight pulls."

Following the hearing, the trial court revoked the defendant's probation. The trial court stated the following:

> Mr. Evans, it appears to me that you have Pit Bulls . . . [and you are] using them for fighting one another or fighting other folks' dogs. I don't what [sic] you have that many Pit Bulls. It takes a lot of money to feed Pit Bulls . . . . The indication is that they've been fighting, and they're yours.
> . . . . That's against the law . . . . And these pictures show those dogs [that have] been fighting got scars on them, and I saw a couple of fresh scars look like it hadn't been too long where they been fighting. Now, you got these dogs, some ten of them, you said are yours . . . . I don't know, but you said some of them belong to this other fellow that . . . left . . . to go to Kentucky . . . .

But . . . you're responsible for their situation when you have dogs like that cooped up, and the Court has a problem with your witness fully testifying because she said that she'd been looking after the dogs ever since she's been there and she hadn't seen anything wrong with the dogs, and we got dogs with maggots . . . [that] she hadn't seen . . . and the dogs in the truck, in your truck, dead dogs. . . . You're responsible for that situation.

Also, the Court hear [sic] testimony that . . . indicated the reason [the police] got a search warrant to go to your house in the first place is because this informant had given some information that turned out to be true. . . . [I]n that neighborhood . . . they found one of these stolen vehicles. . . . [The tip] indicated that you got two of them, these stolen vehicles, that they got them from you.

I don't' know whether they got [the stolen ATVs] from you or whatever, but you had two of them . . . on the property that you own. You own that property nobody else, and that tells me that . . . you're not supposed to be in any situation like that . . . . You don't [sic] supposed to have dogs suffering. . . . [Y]ou aren't supposed to have fighting dogs on your property with them injured needing help.

. . . .

Now, this lady [Richardson] testified that . . . she was there and nobody was in the house, and of course, officer said she told them that they ran out soon as they came to the house in the first instance and told her not to let them in. . . . I don't believe her. I don't believe she told the truth as to what happened.

The trial court then explained that based upon the preponderance of the evidence, the defendant's probation would be revoked.

## II. Analysis

On appeal, the defendant contends that the trial court abused its discretion in revoking his probation. Specifically, he argues that the State's proof that some stolen ATVs were found on his property did not establish that he actually stole the ATVs or that he actually knew that the stolen ATVs were on his property. He argues that he presented undisputed proof that he rented his property on Lawncrest to two other individuals with a condition that they take care of his dogs and no proof placed him on or near the Lawncrest property during the time police officers entered and searched the property. Also, the defendant argues that, contrary to the State's proof, he offered testimony indicating the dogs were in good health. Furthermore, he argues that even if someone was training dogs to fight, the State did not present any proof that connected him to this "repulsive activity."

Initially, we note that the decision to revoke probation lies in the sound discretion of the trial court. State v. Leach, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995). The trial court may revoke probation upon finding by a preponderance of the evidence that the defendant has violated the conditions of his or her probation. See Tenn. Code Ann. §§ 40-35-310, 311(e); State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). The judgment of the trial court to revoke probation will be upheld on appeal unless there has been an abuse of discretion. Harkins, 811 S.W.2d at 82. If the trial judge

has exercised "conscientious judgment in making the decision rather than acting arbitrarily," then there is no abuse of discretion. <u>Leach</u>, 914 S.W.2d at 107. Discretion is abused only if the record contains no substantial evidence to support the trial court's conclusion that a violation has occurred. <u>Harkins</u>, 811 S.W.2d at 82; <u>State v. Gregory</u>, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997).

Upon review, we note that the trial court had before it testimony that stolen ATVs were discovered and seized from the defendant's Lawncrest property. In addition, the trial court heard testimony that three Pit Bulls, seventeen adult dogs, four puppies, two treadmills, and some vitamin B medication were discovered on the defendant's property. The trial court heard testimony and was presented with pictures indicating that some of these dogs were injured or dead as a result of their involvement in dog fighting. Although the defendant presented testimony contradicting the State's evidence relating to his knowledge of the thefts, injuries to the dogs and their involvement in dog fighting, the defendant admitted that he was the owner of the Lawncrest property, the owner of the trailer carrying two stolen ATVs, and the owner of at least ten dogs taken from the property. Moreover, the trial court found that the testimony of Richardson, the defendant's primary witness, lacked credibility. As a result, the trial court chose to accredit the testimony of the State's witnesses and discredit the defendant's witness when determining whether or not the conditions of the defendant's probation were violated.

Looking at the record, the trial court's decision to revoke the defendant's probation is supported by the preponderance of the evidence. We find no abuse of discretion. Therefore, the judgment of the trial court is affirmed.

_____
J.C. McLIN, JUDGE

-5-